# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>CHAD EDWARD JONES,<br><br>    Defendant. | No. 08-CR-66-LRR<br><br>**SENTENCING MEMORANDUM** |

## TABLE OF CONTENTS

*I.     INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.    RELEVANT PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.   SENTENCING FRAMEWORK* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

*IV.    EVIDENTIARY RULES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

*V.     FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
      *A.     Preparation for Robbery.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
      *B.     Robbery.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*

*VI.    ISSUES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

*VII.   OFFENSE LEVEL* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
      *A.     Using a Minor* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
      *B.     Acceptance of Responsibility* . . . . . . . . . . . . . . . . . . . . . . . *12*

*VIII.  CRIMINAL HISTORY CATEGORY* . . . . . . . . . . . . . . . . . . . . . . . . . *12*

*IX.    ADVISORY SENTENCING GUIDELINES RANGE* . . . . . . . . . . . . . . . *12*

*X.     UPWARD VARIANCE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

*XI.    DISPOSITION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

## I. INTRODUCTION

The matter before the court is the sentencing of Defendant Chad Edward Jones ("Defendant Jones").

## II. RELEVANT PRIOR PROCEEDINGS

On November 19, 2008, a grand jury returned a three-count superseding indictment ("Superseding Indictment") (docket no. 15) against Defendant Jones and his co-defendant, Travis Hawkins ("Defendant Hawkins").[1] Count 1 charged Defendants with Possession of a Sawed-Off Shotgun, in violation of 26 U.S.C. §§ 5845(a), 5861(d) and 5871 and 18 U.S.C. § 2.[2] Count 2 charged Defendants with Possession of a Firearm with an Obliterated Serial Number, in violation of 18 U.S.C. §§ 922(k), 924(a)(1)(B) and 924(a)(2).[3] Count 3 charged Defendant Jones with being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[4]

---

[1] On October 22, 2008, the grand jury returned a three-count Indictment ("Indictment") (docket no. 1) against Defendant Jones.

[2] "It shall be unlawful for any person [. . .] to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). A "firearm" is "a shotgun having a barrel or barrels of less than 18 inches in length," or "a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length." 26 U.S.C. § 5845(a)(1) & (2).

[3]
>It shall be unlawful for any person knowingly to [. . .] possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(k).

[4]
>It shall be unlawful for any person [. . .] who has been convicted in any court of[] a crime punishable by

(continued…)

On January 6, 2009, Defendant Jones pled guilty to Counts 1, 2 and 3 of the Superseding Indictment before a United States Magistrate Judge pursuant to a plea agreement ("Plea Agreement") (docket no. 46-2). On the same date, the Magistrate Judge filed a Report and Recommendation (docket no. 47) in which he recommended that the undersigned accept Defendant's guilty plea. On January 21, 2009, the undersigned accepted Defendant's guilty plea.

On April 28, 2009, the United States Probation Office ("USPO") released a draft of Defendant's Presentence Investigation Report ("PSIR"). Both parties lodged objections to the PSIR. On June 2, 2009, the USPO released the Amended and Final Copy of the PSIR.

On June 17, 2009, the government filed its Sentencing Memorandum ("Gov't. Sent. Mem.") (docket no. 63). On June 22, 2009, Defendant filed his Sentencing Memorandum ("Def. Sent. Mem.") (docket no. 67). On June 24, 2009, the government filed a Supplemental Sentencing Memorandum ("Gov't. Supp. Sent. Mem.") (docket no. 68).

On July 1, 2009, the court commenced Defendant's sentencing hearing ("Hearing"). Assistant United States Attorney C.J. Williams represented the government. Attorney Murray W. Bell represented Defendant, who was personally present. At the Hearing, the court received evidence, heard argument, listened to one of the victim's statements and listened to Defendant Jones's allocution. Because of the complexity of the issues presented in this sentencing, the court reserved ruling pending the instant Sentencing Memorandum.

---

[4](…continued)
> imprisonment for a term exceeding one year [. . .] to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

The court advised the parties it would take the sentencing issues under advisement, issue a written opinion and then reconvene the Hearing to impose sentence.

At the Hearing, the court advised the parties that it was considering an upward variance from Defendant Jones's advisory Sentencing Guidelines range. The court invited the parties to file memoranda on the variance issue on or before July 13, 2009. On July 13, 2009, Defendant Jones filed a Supplemental Sentencing Memorandum ("Def. Supp. Sent. Mem.") (docket no. 76) on the variance issue. On July 21, 2009, the government filed a response to Defendant Jones's Supplemental Sentencing Memorandum (docket no. 78).

### III. SENTENCING FRAMEWORK

A "district court should begin [a sentencing proceeding] with a correct calculation of the [defendant's] advisory Sentencing Guidelines range." *United States v. Braggs*, 511 F.3d 808, 812 (8th Cir. 2008). A defendant's Guidelines range "is arrived at after determining the appropriate Guidelines range and evaluating whether any traditional Guidelines departures are warranted." *United States v. Washington*, 515 F.3d 861, 865 (8th Cir. 2008).

"[A]fter giving both parties a chance to argue for the sentence they deem appropriate, the court should consider all of the factors listed in 18 U.S.C. § 3553(a) to determine whether they support the sentence requested by either party." *Braggs*, 511 F.3d at 812. "The district court may not assume that the Guidelines range is reasonable, but instead 'must make an individualized assessment based on the facts presented.'" *Id.* (quoting *Gall v. United States*, 128 S. Ct. 586, 597 (2007)); *see, e.g.*, *Nelson v. United States*, 129 S. Ct. 890, 892 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable.").

The district court "has substantial latitude to determine how much weight to give the various factors under § 3553(a)." *United States v. Ruelas-Mendez*, 556 F.3d 655, 657

4

(8th Cir. 2009); *see also United States v. Feemster*, No. 06-2059, 2009 WL 2003970, *7 (8th Cir. July 13, 2009) (en banc) ("'[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable.'" (quoting *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008)). "If the court determines that a sentence outside of the Guidelines is called for, it 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Braggs*, 511 F.3d at 812 (quoting *Gall*, 128 S. Ct. at 597). "The sentence chosen should be adequately explained so as 'to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *Id*.

All contested issues in Defendant Jones's sentencing are now fully submitted and ready for decision. On August 10, 2009, at 8:00 a.m., the court shall reconvene the Hearing and impose sentence.

## IV. EVIDENTIARY RULES

The court makes findings of fact by a preponderance of the evidence. *See, e.g.*, *United States v. Bah*, 439 F.3d 423, 426 n.1 (8th Cir. 2006) ("[J]udicial fact-finding using a preponderance of the evidence standard is permitted provided that the [Sentencing Guidelines] are applied in an advisory manner."). The court considers a wide variety of evidence, including the undisputed portions of the PSIR and the evidence introduced at the Hearing. The court does not "put on blinders" and only consider the evidence directly underlying Defendant Jones's offenses of conviction. In calculating Defendant Jones's Guidelines range, for example, the court applies the familiar doctrine of relevant conduct. *See* USSG §1B1.3 (2008). The Eighth Circuit Court of Appeals has repeatedly held that a district court may consider uncharged, dismissed and even acquitted conduct at sentencing. *See, e.g.*, *United States v. Whiting*, 522 F.3d 845, 850 (8th Cir. 2008); *United States v. Bradford*, 499 F.3d 910, 922 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 1446

(2008). When relevant and "accompanied by sufficient indicia of reliability to support the conclusion that it [was] probably accurate," the court credits hearsay. *United States v. Sharpfish*, 408 F.3d 507, 511 (8th Cir. 2005).

## V. FACTS

The following facts are drawn from the uncontested portions of the PSIR, the Plea Agreement and the other evidence presented at the Hearing:[5]

At some point in early to mid-July of 2008, Defendant Hawkins hatched a robbery plan. Defendant Hawkins spoke of this plan to Defendant Jones and Defendant Jones's 17-year-old brother, J.J. (together, the "trio"). The plan consisted of a nighttime robbery of a residence located at 597 Cedar Valley Road in West Branch, Iowa (the "Residence"). Tom Cannon and his wife, Julie Cannon, lived at the Residence along with their minor daughter, whom Defendant Hawkins had dated. Because of his relationship with the Cannons, Defendant Hawkins had been inside the Residence on multiple occasions and learned the security access code to the Residence.

M.T., a minor cousin of Defendant Jones and J.J., testified before a grand jury about a conversation she overheard between the trio during which Defendant Hawkins broached the subject of robbery:

> Q. Tell the Grand Jury what you heard when you were in the living room.
>
> A. Basically just that [Defendant Hawkins] was talking about his ex-girlfriend that I met once before and he was dating her and she had this ring on that was her mom's and he wanted to take it. He said that they should go in there and take the ring for 25 grand.
>
> * * *
>
> Q. Did [Defendant Hawkins] mention using a gun to do that?

---

[5] The court makes additional factual findings in conjunction with its conclusions of law.

> A. Yes.
>
> Q. What did he say about that?
>
> A. He said they should just go in there and tie them up with guns.

Gov. Ex. 1 (docket no. 74-2), at 3.

### A. *Preparation for Robbery*

The trio took several steps to prepare for the robbery in a shop on a farm located in Tipton, Iowa. Defendant Jones and J.J. lived on the farm.

First, the trio sawed off the barrel of a Remington Model 870 Express 12 gauge pump-action shotgun ("Firearm"). Defendants decided to shorten the barrel of the Firearm to make it easier to handle during the robbery. Defendant Jones sawed off the Firearm with a hacksaw in Defendant Hawkins's presence. After sawing off the Firearm, the barrel had a length of less than 18 inches. More specifically, the altered barrel length was 13 and 7/16 inches and the altered Firearm had an overall length of 33 and 5/8 inches.

Second, the trio filed the serial number off the Firearm. The trio decided to grind the serial number off so that no one could identify the Firearm. J.J., while in Defendants' presence, removed the serial number from the Firearm.

Third, the trio added a strap to the butt end of the Firearm. Defendant Jones carved the words "MONEY MAKER" into the side of the Firearm's receiver. PSIR at ¶ 24 (emphasis in original).

Fourth, after the trio made all these alterations, each member handled and tested the Firearm. Each member of the trio knew of all the alterations prior to robbing the Residence.

Fifth, during the early evening on July 18, 2008, Defendant Hawkins and J.J. traveled to the area surrounding the Residence. Defendant Hawkins and J.J. scouted the area and selected a location to park a getaway vehicle during the robbery.

## B. Robbery

In the early morning hours of July 19, 2008, J.J. drove the trio to the Residence. J.J. dropped Defendants off at the Residence and then parked the vehicle at the location that J.J. and Defendant Hawkins had previously selected. J.J. remained in the vehicle as the get-away driver.

Defendants entered the Residence using the access code Defendant Hawkins had obtained while dating the Cannons' minor daughter. Defendants wore dark clothing, masks and gloves. Defendant Hawkins wore a stuffed brassiere so he would appear to be a woman to mislead the victims and law enforcement into believing the suspects were a man and a woman rather than two men. Defendant Jones carried the Firearm.

Defendants entered the Cannons' master bedroom where Tom and Julie Cannon were asleep in bed. Defendant Jones loudly and aggressively announced Defendants' presence. Then, Defendant Jones pointed the Firearm at Tom and Julie Cannon. Defendant Jones ordered them to remain in bed.

Tom Cannon jumped from his bed and began wrestling with Defendant Jones to gain control of the Firearm. Defendant Hawkins fled the bedroom and the Residence. Using the Firearm, Defendant Jones struck Tom Cannon in the head and chest several times, causing him to bleed from his head, face and body.

Julie Cannon joined the struggle between Defendant Jones and Tom Cannon and wrestled the Firearm away from Defendant Jones. Then, Defendant Jones fled the bedroom and the Residence. Julie Cannon attempted to fire the Firearm at Defendant Jones as he fled the Residence; however, she was unable to do so because the safety lock was enabled.

Defendants ran to the get-away vehicle. J.J. drove them away from the scene of the robbery. While J.J. drove, Defendants removed the clothing they had worn during the robbery. They placed a portion of this clothing into a plastic garbage bag and threw it into

a roadside ditch as J.J. drove.

## VI. ISSUES

The government raises one issue with respect to the USPO's calculation of Defendant Jones's advisory Sentencing Guidelines range: whether the court should apply the two-level enhancement in USSG §3B1.4 for using a minor to commit a crime. The government bears the burden of proof on this issue. *See United States v. Flores*, 362 F.3d 1030, 1037 (8th Cir. 2001) (stating that the government bears the burden to prove sentencing enhancements). Initially, the parties objected to the USPO's calculation of Defendant Jones's restitution. However, the parties now agree that Defendant Jones owes the Cannons $2,764.72 in restitution. *See* Gov't. Supp. Sent. Mem. (stating the parties had agreed to amount of restitution). Accordingly, the court does not address this issue in the instant Sentencing Memorandum.

## VII. OFFENSE LEVEL

The parties agree that Defendant Jones's base offense level is **22**. *See* USSG §2K2.1(a)(3) and App. A (Statutory Index). The parties also agree that Defendant Jones is subject to: (1) a **four-level** upward adjustment pursuant to USSG §2K2.1(b)(4) because the Firearm had "an altered or obliterated serial number"; and (2) a **four-level** upward adjustment pursuant to USSG §2K2.1(b)(6) because he used the Firearm in connection with another felony offense; that is, the robbery. This brings Defendant Jones's offense level to **30**.

### *A. Using a Minor*

The government argues that the court should apply a **two-level** upward adjustment because Defendant Jones "used or attempted to use a person less than eighteen years of age," that is, J.J., "to commit the offense or assist in avoiding detection of, or apprehension for, the offense[.]" USSG §3B1.4. The USPO declined to apply this

upward adjustment when calculating Defendant Jones's offense level in the PSIR.[6]

For purposes of §3B1.4, "'[u]sed or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." USSG §3B1.4 cmt. (n.1). For this enhancement to apply, "the defendant must affirmatively involve or incorporate the minor into the commission of the offense[.]" *United States v. Mentzos*, 462 F.3d 830, 841 (8th Cir. 2006) (citing *United States. v. Paine*, 407 F.3d 958, 965 (8th Cir. 2005)). "'Used or attempted to use' does not [. . .] require active involvement on behalf of the minor." *Paine*, 407 F.3d at 965 (citing *United States v. Castro-Hernandez*, 258 F.3d 1057, 1060 (9th Cir. 2001)). "'The unambiguous legislative design of [§]3B1.4 is to protect minors as a class from being "solicited, procured, recruited, counseled, encouraged, trained, directed, commanded, intimidated, or otherwise used" to commit crime.'" *Id.*, 407 F.3d at 965 (quoting *United States v. McClain*, 252 F.3d 1279, 1286 (11th Cir. 2001)).

The USPO advised the court to not apply the §3B1.4 enhancement. The USPO stated that Defendant Jones did not "use" J.J. in the commission of the robbery; rather, J.J. was a willing and equal participant in the trio. The government argues that the enhancement should apply because Defendant Jones rode in the getaway car that J.J. drove and made alterations to the Firearm with J.J. and Defendant Hawkins.[7] Although these

---

[6] The court recognizes that the parties stipulated to the application of the §3B1.4 enhancement in paragraph 13 of the Plea Agreement. However, the court is not bound to the terms of a plea agreement outside the context of Federal Rule of Criminal Procedure 11(c)(1)(C). *United States v. Keller*, 413 F.3d 706, 708 (8th Cir. 2005).

[7] The government also argues that the enhancement should apply because, according to the PSIR, after law enforcement arrested Defendant Jones and J.J., Defendant Jones instructed J.J. to refrain from speaking with law enforcement. Defendant Jones objected to this factual finding in the PSIR and the government did not provide any evidence to rebut the objection. Accordingly, the court shall not consider this allegation in the instant Sentencing Memorandum. *See United States v. Jenners*, 473 F.3d 894, 898-99 (8th Cir.
(continued…)

10

actions indicate that Defendant Jones participated in the offense with J.J., they do not demonstrate that Defendant Jones took any affirmative act to engage or involve J.J. in the offense. *See Paine*, 407 F.3d 958, 965 (8th Cir. 2005) ("[T]he two-level §3B1.4 increase is only applicable if a defendant [. . .] in some way *affirmatively engages* the minor participant in the crime of conviction.") (Emphasis added.).

The government does not point to any authority that states that a defendant's mere participation in a crime merits the §3B1.4 enhancement. Indeed, case law from the Eighth Circuit Court of Appeals indicates that this enhancement applies only when a defendant takes affirmative actions to involve the minor in the offense. *See, e.g.*, *United States v. Tipton*, 518 F.3d 591, 597 (8th Cir. 2008) (affirming application of §3B1.4 enhancement when the defendant had hired and harbored minors in the commission of offense); *United States v. Voegtlin*, 437 F.3d 741, 747 (8th Cir. 2006) (affirming application of enhancement when the minor purchased pills for the defendant and the defendant "personally instructed [the minor] to implicate another person if [the minor] was arrested"); *United States v. Wingate*, 369 F.3d 1028 (8th Cir. 2004) (affirming application of the §3B1.4 enhancement when, "[b]ut for [the defendant]'s conduct, [the minors] would not have been involved in the crime"), *reinstated*, 415 F.3d 885 (8th Cir. 2005).

In the absence of any evidence that Defendant Jones took affirmative action to "direct[], command[], encourag[e], intimidat[e], counsel[], train[], procur[e], recruit[], or solicit[]" J.J.'s involvement with the robbery, the court finds that the government has failed to show that Defendant Jones "used" a minor in the commission of the offense. USSG §3B1.4 cmt. (n.1). Accordingly, the court declines to apply the §3B1.4

---

[7](…continued)
2007) ("If the defendant objects to any of the factual allegations contained in the PS[I]R on an issue on which the government has the burden of proof, such as any enhancing factors, the government must present evidence at the sentencing hearing to prove the existence of the disputed facts.").

enhancement. Defendant Jones's offense level remains at **30**.

### B. *Acceptance of Responsibility*

The parties agree Defendant Jones is entitled to a **two-level** reduction for acceptance of responsibility under USSG §3E1.1(a). The court finds Defendant Jones has demonstrated acceptance of responsibility and shall apply this reduction. Additionally, from the context of the PSIR and the parties' sentencing memoranda, the court anticipates the government may ask for an additional **one-level** reduction for acceptance of responsibility pursuant to USSG §3E1.1(b). In the event the government makes this motion and the court grants it, Defendant Jones's adjusted offense level would be reduced to **27**.

### VIII. CRIMINAL HISTORY CATEGORY

The parties do not dispute Defendant Jones's criminal history category under the Guidelines. Defendant Jones is a Criminal History Category **V**.

### IX. ADVISORY SENTENCING GUIDELINES RANGE

Defendant Jones is a **Criminal History Category V** with a total adjusted offense level of **27**. His advisory Sentencing Guidelines range is **120 to 150 months of imprisonment**. *See* USSG Sentencing Table.

### X. UPWARD VARIANCE

Title 18 U.S.C. § 3553(a) directs the court to consider the following factors in determining the particular sentence to be imposed:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> > (B) to afford adequate deterrence to criminal conduct;
>
> > (C) to protect the public from further crimes of the defendant; and
>
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for [. . .] the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [. . .] issued by the Sentencing Commission[;]
>
> (5) any pertinent policy statement [. . .] issued by the Sentencing Commission[;]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" above. *Id.* However, the court need not explicitly set forth its analysis of all the § 3553(a) factors. *See, e.g.*, *United States v. Lamoreaux*, 422 F.3d 750, 756 (8th Cir. 2005) (citing *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005) ("Nothing in § 3553(a) or in the *Booker* remedy opinion requires 'robotic incantations' that each statutory factor has been considered.")).

As it indicated at the Hearing, the court believes an upward variance is proper in the instant sentencing. When a district court decides to vary, it "'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the

13

degree of the variance[.]'" *United States v. Werst*, No. 08-3364, 2009 WL 1687765, *2 (8th Cir. June 18, 2009) (quoting *Gall*, 128 S. Ct. at 597) (affirming district court's upward variance). "The additional time to be served above the [G]uidelines range is a matter that is largely commended to the discretion of the district court." *United States v. Mahamud*, No. 08-3991, 2009 WL 1035163, *1 (8th Cir. Apr. 20, 2009).

The court concludes that a sentence within the Guidelines range is not appropriate in this case. The Guidelines do not fully capture a variety of factors the court finds highly relevant to the instant sentencing. For example, the nature and circumstances of Defendant Jones's offenses merit a sentence longer than 150 months of imprisonment. The robbery was premeditated. Defendant Jones spent a great deal of time making alterations to the Firearm and otherwise preparing for the robbery. Also, Defendant Jones's offense conduct was violent. He awakened his victims in the middle of the night by threatening and assaulting them with a sawed-off shotgun. Defendant Jones also took pains to conceal his identity from the Cannons to avoid detection. And, although he did not "use" a minor in the commission of the robbery under USSG §3B1.4, he did not object to his minor brother's participation in the offense.

Defendant Jones's history and characteristics also support an upward variance. Defendant Jones has a substantial amount of unscored criminal history, such as Possession of Alcohol Under Legal Age and Interference With Official Acts. The court also notes that Defendant Jones has a history of burglary and theft that began when Defendant Jones was fourteen years old.

The court also finds an upward variance is necessary to reflect the seriousness of Defendant Jones's offenses, promote respect for the law and provide just punishment. A term of 150 months of imprisonment will not accomplish this purpose because it does not reflect the pain and anguish the Cannons have suffered as a result of Defendant Jones's actions. The Cannons will continue to feel unsafe in their own home and Defendant

Jones's sentence should reflect this harm.

Additionally, a sentence longer than 150 months of imprisonment is necessary to protect the public from further crimes by Defendant Jones. Defendant Jones is violent and dangerous. He preyed upon an innocent, sleeping family by holding them hostage with a sawed-off shotgun. Further, Defendant Jones poses a high risk to recidivate. Defendant's criminal history shows that, prior to his arrest for the instant offenses, Defendant Jones's criminal activity was escalating. Defendant Jones had become emboldened to attempt riskier and more violent acts to attain his criminal goals. These facts show Defendant Jones has little regard for the letter of the law.

After considering the § 3553(a) factors, the court finds that an upward variance of **30** months, for a total of **180 months of imprisonment**, is warranted in the instant sentencing. In light of its analysis of the § 3553(a) factors above, the court finds that its justification to impose this upward variance is sufficiently compelling to support the degree of the variance.

## *XI. DISPOSITION*

After all applicable adjustments, the court found Defendant Jones's final advisory Sentencing Guidelines range is **120 to 150 months imprisonment**. After considering all of the § 3553(a) factors, the court finds a **sentence of a term of 180 months** is appropriate for Defendant Jones. The court shall impose sentence on Defendant Jones in a manner consistent with the instant Sentencing Memorandum when it reconvenes the Hearing.

**IT IS SO ORDERED.**

**DATED** this 27th day of July, 2009.

                                        LINDA R. READE
                                        CHIEF JUDGE, U.S. DISTRICT COURT
                                        NORTHERN DISTRICT OF IOWA